UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------
In re:

                                               Chapter 7

Samra Ali as John Doe or Jane Doe
aka Samra Bibi,

                                               Case No. 8-22-73404-las

                        Debtor.
-------------------------------------------------------------x

**MEMORANDUM DECISION DENYING DEBTOR'S MOTION TO
CONVERT CHAPTER 7 CASE TO A CASE UNDER CHAPTER 13**

I.    <u>Introduction</u>

       This matter is before the Court on the motion of the debtor, Samra Ali (the "Debtor"),

to convert this chapter 7 case to one under chapter 13 of the Bankruptcy Code pursuant to

11 U.S.C. § 706[1] ("Motion to Convert"). [Dkt. No. 111]. The Motion to Convert was filed ten

months after Debtor commenced her chapter 7 case and seventeen days after the chapter 7

trustee filed a motion seeking approval of the sale of real property in which Debtor claims to

have an interest ("Sale Approval Motion") [Dkt. No. 104].[2] The chapter 7 trustee filed

opposition to the Motion to Convert [Dkt. No. 117], and Debtor filed a reply [Dkt. No. 119].

       The Court held an evidentiary hearing on the Motion to Convert, observing the

demeanor and testimony of each witness carefully, and has reviewed thoroughly the evidence

presented and the parties' submission and arguments.[3] This Memorandum Decision

---

[1] All statutory references to sections of the United States Bankruptcy Code, 11 U.S.C. § 101 et seq., will hereinafter be referred to as "§ (section number)."

[2] Debtor first filed an emergency application seeking to convert this chapter 7 case and to obtain a temporary restraining order to stay the sale of real property pending a hearing and determination of her application. [Dkt. No. 109]. The emergency application came five months after the Court entered an Order dated April 26, 2023 authorizing the chapter 7 trustee to sell the real property [Dkt. No. 66], and eleven days after the chapter 7 trustee filed his Sale Approval Motion. The Court denied the emergency application due to Debtor's failure to satisfy the notice provisions for a temporary restraining order pursuant to Rule 65(b) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), made applicable pursuant to Bankruptcy Rule 7065, and demonstrate cause for expedited relief. [Dkt. No. 110]. Accordingly, Debtor filed and noticed the Motion to Convert for a hearing on the Court's regular calendar. [Dkt. No. 111].

[3] All references to the evidentiary hearing transcript will hereinafter be referred to as "Tr." [Dkt. No. 133]. The chapter 7 trustee and Debtor submitted a joint exhibit book for the evidentiary hearing and the parties stipulated

constitutes the Court's findings of fact and conclusions of law in accordance with Fed. R. Civ. P. 52(a), made applicable to this contested matter by Bankruptcy Rule 9014(c). To the extent a finding of fact includes a conclusion of law, it is deemed a conclusion of law and vice versa.

For the reasons set forth herein, the Motion to Convert is denied.[4] After carefully considering the evidentiary record and the applicable law, the Court finds that Debtor is not eligible to be a debtor under chapter 13. A debtor's right to convert a chapter 7 case to a case under chapter 13 pursuant to § 706(a) is expressly limited by § 706(d). Section 706(d) provides that "[n]otwithstanding any other provision of this section, a case may not be converted to a case under another chapter of this title unless the debtor may be a debtor under such chapter." 11 U.S.C. § 706(d). Section 706(d), therefore, permits conversion only if a debtor is eligible to be a debtor under chapter 13. Eligibility for relief under chapter 13 is governed by § 109(e) which requires, *inter alia*, that a debtor be an "individual with regular income," as that term is defined in § 101(30). 11 U.S.C. § 109(e). In relevant part, § 101(30) provides that "[t]he term 'individual with regular income' means an individual whose income is sufficiently stable and regular to enable such individual to make payments" under a chapter 13 plan. 11 U.S.C. § 101(30).

Here, the Court concludes that Debtor has failed to carry her burden to establish that she is an "individual with regular income" as defined in § 101(30). First, Debtor's amended Schedule I: Your Income and amended Schedule J: Your Expenses, submitted under penalty of perjury, disclose that she is unemployed, and her monthly net income is $73.00 based on

---

to the admissibility of all the exhibits. Tr. 10:1-2. All references to exhibits will hereinafter be referred to as "Ex. (exhibit number)."

[4] The Court held a status conference in this matter on August 13, 2024, at which it advised the parties that the Motion to Convert was denied. At the conclusion of the ruling conference the Court intended to "so order" the record. However, the Court did not "so order" the record and subsequently issued an Order denying the Motion to Convert [Dkt. No. 139]. Debtor did not appeal that Order, and the time to do so has expired. This Memorandum Decision is consistent with and explains further the bases of the Court's ruling at the conference and as set forth in the Order.

$658.00 listed in Schedule I, 8f. as government assistance received by her non-filing spouse, and expenses listed in Schedule J aggregating $585.00. [Dkt. No. 21]. The net monthly income of $73.00 is insufficient to fund payment in full of all claims, secured and unsecured, under her proposed chapter 13 plan.[5] Second, Debtor has failed to provide credible proof to support a finding of contributions from her husband, Najabat Ali, and a family friend, Hayya Faisal Lodhi, sufficient to fund her proposed 100% repayment plan.[6] Additionally, conversion of the chapter 7 case to a case under chapter 13 would prompt a motion to dismiss by the chapter 13 trustee under § 1307(c) on the grounds that Debtor does not have a source of income sufficiently stable and regular to enable her to fund a 100% repayment plan. Simply put, Debtor cannot propose a confirmable plan and conversion to chapter 13 would be futile. *See Law v. Siegel*, 571 U.S. 415, 426 (2014).

Because the Court finds that Debtor does not qualify to be a debtor under chapter 13, the Court need not, and does not, address whether Debtor's conduct, as alleged by the trustee, precludes conversion under the decision of the United States Supreme Court in *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365 (2007).

II.    Jurisdiction

The Court has subject matter jurisdiction over this contested matter pursuant to 28 U.S.C. § 1334(b) and the Standing Order of Reference of the United States District Court for the Eastern District of New York, dated August 28, 1986 (Weinstein, C.J.), as amended by

---

[5] In the Motion to Convert, Debtor states that she will propose and confirm a plan that will pay all claims in full, *see* Motion to Convert, ¶ 4. Falling short of a 100% plan will not suffice under the circumstances of this case as Debtor does not dispute that the net proceeds from the trustee's proposed sale of real property will be sufficient to pay all claims in full. Therefore, to confirm her chapter 13 plan, Debtor, *inter alia*, must satisfy (i) §1325(a)(4) with respect to a distribution to unsecured creditors in at least as much as they would have received in a chapter 7 case and (ii) §1325(a)(5)(B) with respect to treatment of secured claims. Here, Debtor falls short on both requirements as she has failed to demonstrate that she has a regular source of income that is sufficiently stable and regular to enable her to propose, confirm and perform a chapter 13 plan.

[6] Mr. Ali and Ms. Lodhi were the only witnesses called to testify by Debtor in support of the Motion to Convert. Debtor did not testify on her own behalf.

Order dated December 5, 2012 (Amon, C.J.) entered in accordance with 28 U.S.C. § 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O).

III.  Factual Background and Procedural History

The relevant facts are not in dispute, unless otherwise noted.

A.  The Chapter 7 Petition and Debtor's Schedules

Debtor, represented by counsel, Bhatia & Associates, PLLC, filed a petition for relief under chapter 7 of the Bankruptcy Code on November 29, 2022. Allan B. Mendelsohn is the appointed chapter 7 trustee ("Trustee").[7]

Debtor stated on her bankruptcy petition that she resided at 20 Linden Street, Lake Ronkonkoma, New York ("Linden Street Property"). [Dkt. No. 1]. Debtor did not list an ownership interest in the Linden Street Property, nor did she claim to reside at the Linden Street Property under a rental agreement. *Id*. In her original bankruptcy schedules filed on December 13, 2022, Debtor listed a 100% ownership interest in real property located at 4073 Express Drive North, Lake Ronkonkoma, New York ("Express Drive North Property") and claimed a homestead exemption in the Express Drive North Property in her Schedule C. [Dkt. No. 12]. In Schedules D and E/F, Debtor checked the box stating that she did not have any secured or priority unsecured creditors, and checked the box on Schedule G stating that she did not have any executory contracts or unexpired leases. *Id*. In Schedule E/F, Debtor listed general unsecured credit card debt of $25,820.07. *Id*. In her Statement of Financial Affairs ("SOFA"), the Debtor listed two pending lawsuits by Discover Bank. [Dkt. No. 15]. In

---

[7] Debtor did not appear and submit to an examination under oath at the meeting of creditors under § 341(a) as is required under § 343. Nor has Debtor filed a Certificate of Debtor Education or Official Form 423 Certification About a Financial Management Course in accordance with Bankruptcy Rules 1007(b)(7) and 1007(c) despite having notice of such failure. [Dkt. No. 36]. Having failed to complete the required postpetition personal financial management course, Debtor is not entitled to a discharge in her chapter 7 case. 11 U.S.C. § 727(a)(11).

Schedule I, Debtor stated she is unemployed and, in response to Question 8c., stated that her income consisted solely of $658 per month in family support payments.[8] [Dkt. No. 12]. In Schedule J, Debtor stated that she has no expenses, leaving her with monthly net disposable income of $658. *Id.* Information on Schedule I for a non-filing spouse is left blank. *Id.*

On January 20, 2023, almost two months after filing her chapter 7 petition, Debtor filed amended schedules. [Dkt. No. 21]. Debtor's amended Schedule A/B lists the value of the Express Drive North Property as $450,000, the same amount as in her original Schedule A/B, but now states that the value of her ownership interest is $328,268.14. *Id*; *see also* Ex. 1. It appears that the value of her ownership interest is arrived at by subtracting $121,731.86 from the claimed value of $450,000 because, unlike in her original schedules where she listed no secured debt, Debtor lists Sun Trust Mortgage as a secured creditor in amended Schedule D with a claim of $121,731.86 secured by the Express Drive North Property. [Dkt. No. 21].

Debtor's amended Schedule I states that both she and her non-filing spouse are unemployed and the $658 in income is no longer listed in response to Question 8c. (family support payments). *Id.* Rather, that amount is now listed in response to Question 8f. as government assistance her non-filing spouse receives. *Id*; *see also* Ex. 2. Other than the response to Question 8f., Debtor does not list income from any source. *Id.* Unlike in her original Schedule J where she listed no expenses, Debtor's amended Schedule J lists expenses totaling $585, consisting of $235 for utilities, $200 for food and housekeeping supplies, $100 for clothing, laundry, and dry cleaning, and $50 for transportation, leaving a monthly net disposable income of $73. *Id.* Debtor does list any mortgage payment or rent payment in the list of expenses in amended Schedule J. Debtor also states in her amended Schedules I and

---

[8] The purported family support contribution of $658 listed by Debtor in response to Question 8c. of Schedule I is not listed in Form 122A-1 (Chapter 7 Statement of Your Current Monthly Income) filed by Debtor on December 15, 2022 [Dkt. No. 19], two days after she filed her original bankruptcy schedules. In Form 122A-1, Debtor listed no income.

J that she does not expect her income and expenses to either increase or decrease within the year. *Id.*

Debtor's original SOFA listed no wages or income from other sources in the three-year period prior to filing for relief under chapter 7. [Dkt. No. 15]. Debtor's amended SOFA now includes unemployment income of $54,720 and $48,612 that she claims to have received in 2020 and 2021, respectively, and $7,238 in EBT (SNAP) benefits she claims to have received prepetition in 2022. [Dkt. No. 22]. The amended SOFA does not list any income for the non-filing spouse for the three-year period prior to the bankruptcy filing. *Id.*

### B. The Eviction Proceeding

The filing of Debtor's chapter 7 case invoked the automatic stay under § 362(a) and halted an eviction proceeding commenced by Cox REIT, LLC ("Cox REIT"), the owner of the Linden Street Property. Cox REIT purchased the Linden Street Property on September 30, 2021 and subsequently obtained an Order of Ejectment[9] on August 2, 2022 from the state court. [Dkt. No. 45, Ex. B]. On March 2, 2023, Cox REIT sought relief from the automatic stay under § 362(d)(1) to permit it to continue the eviction proceeding. [Dkt. Nos. 45, 47]. Debtor filed opposition to the stay relief motion. [Dkt. No. 52]. The Court heard oral argument on March 22, 2023 and, for the reasons set forth on the record of the hearing, granted stay relief by Order dated March 22, 2023. [Dkt. No. 60].

### C. Trustee's Motion to Sell Express Drive North Property

On March 22, 2023, the Trustee filed a motion seeking an order pursuant to §§ 363(a), (b), (f) and (m) authorizing the sale of the Express Drive North Property, free and clear of all liens, claims, and encumbrances ("Motion to Sell"). [Dkt. No. 57]. The Motion to Sell was

---

[9] The Order of Ejectment was issued against the named defendants consisting of Najabat Ali, Faisal Samina, Kausar Rukhsana, Eric Garcia, Anna Ayala, and "John Doe" and "Jane Doe" and all other person residing at or claiming any right or occupancy of the Linden Street Property. [Dkt. No. 45, Ex. B].

unopposed and the Court granted the motion after a hearing held on April 25, 2023 at which only the Trustee and his counsel appeared. The Court entered an Order dated April 26, 2023 approving the terms and conditions of the Trustee's auction sale of the Express Drive North Property. [Dkt. No. 66]. On April 25, 2023, the Trustee filed a motion objecting to the Debtor's claimed homestead exemption in the Express Drive North Property ("Objection to Homestead Exemption"). [Dkt. No. 62]. The Trustee asserted that the Debtor admitted that she resided at the Linden Street Property and not at the Express Drive North Property at the time she commenced her chapter 7 bankruptcy case and, as such, she improperly claimed a homestead exemption with respect to the Express Drive North Property. *Id.*

Debtor's counsel filed a letter, dated May 15, 2023, advising that he was ill and requesting an adjournment of the May 16, 2023 hearing on the Objection to Homestead Exemption and an extension of time to respond. [Dkt. No. 70]. On May 16, 2023, the return date of the Objection to Homestead Objection, the Trustee's counsel appeared and consented to the adjournment of the hearing to June 6, 2023, and advised the Court that he would inform Debtor's counsel of the adjourned hearing date. No opposition to the Objection to Homestead Exemption was filed by Debtor, and Debtor's counsel did not appear at the June 6, 2023 hearing. Accordingly, for the reasons set forth on the record at the hearing, the Court sustained the Trustee's objection and entered an Order dated June 15, 2023 disallowing Debtor's claimed homestead exemption in the Express Drive North Property. [Dkt. No. 74]. Debtor did not appeal the Order granting the Motion to Sell the Express Drive North Property or the Order sustaining the Objection to Homestead Exemption, and the time to do so has long-since expired.

By motion dated June 26, 2023, the Trustee sought entry of an order authorizing the removal and eviction of any party at the Express Drive North Property to permit the Trustee to sell the property unoccupied. [Dkt. No 75]. The Trustee had discovered individuals were

residing at the Express Drive North Property notwithstanding the absence of any lease agreement listed in the Debtor's Schedule G. On July 21, 2023, in opposition to the Trustee's motion, Debtor filed a cross motion [Dkt. No. 77], together with an affirmation of Debtor [Dkt. No. 78] and two affidavits of Debtor [Dkt. Nos. 79, 81], as well as counsel's affirmation [Dkt. No. 80],[10] asserting that while she is the owner of the Express Drive North Property, she is not the borrower on the mortgage. She also alleged that tenants occupy the property under leases entered into by her husband who she claims is the landlord. In the opposition, Debtor requested the Court set aside the order sustaining the Trustee's objection to her homestead exemption and requested dismissal of her chapter 7 case. The Trustee filed a response on July 24, 2023. [Dkt. No. 82]. The Court held a hearing on August 1, 2023, at which the Trustee and his counsel appeared. There was no appearance by Debtor or her counsel. For the reasons set forth on the record at the hearing, the Court denied the Trustee's motion without prejudice and denied Debtor's motion to dismiss her chapter 7 case and to set aside prior orders of the Court. On August 3, 2023, the Court entered two orders consistent with its ruling at the hearing.[11] [Dkt. Nos. 84, 85].

During the period of September 11, 2023 through September 13, 2023, the Trustee held an online auction sale of the Express Drive North Property. On September 15, 2023, the Trustee filed the Sale Approval Motion seeking an order approving the sale of the Express Drive North Property to Raffay Abid for the purchase price of $462,000.[12] [Dkt. No. 104].

---

[10] Debtor's affirmation [Dkt. No. 78] and counsel's affirmation [Dkt. No. 80] are virtually identical in the recitation of the facts and the requested relief.

[11] On August 17, 2023, Debtor filed a notice of appeal of the August 3, 2023 Order denying her request to dismiss the chapter 7 case. [Dkt. No. 88]. Debtor failed to file the required brief in support of the appeal as directed by the District Court and failed to respond to the District Court's Order to Show Cause as to why the appeal should not be dismissed for failure to prosecute. Debtor's appeal was dismissed on January 10, 2024. [Dkt. No. 132].

[12] The Memorandum of Sale, dated September 13, 2023, lists under the heading "Attorney Information" that follows the signatures of Mr. Abid, as the successful bidder at auction, and the auctioneer, the name and contact information of Debtor's bankruptcy counsel, Satish Bhatia. [Dkt. No. 104, Ex. 2, Memorandum of Sale]. It is undisputed that Mr. Bhatia did not represent the auctioneer in the online auction and the Memorandum of Sale,

D. Debtor's Motion to Convert

On September 19, 2023, a motion was filed seeking to substitute Lester Korinman Kamran & Masini, P.C. as Debtor's counsel. [Dkt. No. 107]. An Order granting the requested relief was subsequently entered by the Court. [Dkt. No. 131].

On September 26, 2023, Debtor filed an Order to Show Cause seeking to convert her chapter 7 case to a chapter 13 case and a temporary stay of the sale of the Express Drive North Property. [Dkt. No. 109]. The Court denied Debtor's request for entry of an Order to Show Cause and a temporary restraining order and directed Debtor to provide proper notice of the motion. [Dkt. No. 110].

Debtor filed the Motion to Convert on October 2, 2023. [Dkt. No. 111]. In support of the Motion to Convert, Debtor filed her affidavit and relied on an affidavit of contribution filed by her non-filing spouse, Najabat Ali ("Najabat").[13] Debtor admitted she filed the chapter 7 case solely because of the impending eviction from the Linden Street Property without realizing that she was placing the Express Drive North Property at risk. *Id.* In the Motion to Convert, Debtor states her intention to file and propose a chapter 13 plan that provides for a 100% payment of all claims. She states that there is a $242,656.14 mortgage held by Specialized Loan Servicing against the Express Drive North Property with arrears of approximately $23,639.54 and that there are $219,016.60 in filed claims, of which $194,650 is a proof of claim filed by Cox REIT. Debtor contends that Cox REIT's claim is based upon a judgment entered in its favor in an ejectment action pending in state court that set an inquest as to the amount to be awarded to Cox REIT for real property taxes and fair use and

---

therefore, raises the question whether Mr. Bhatia represented the successful bidder while also representing Debtor.

[13] In his Affidavit of Contribution Najabat identified himself as "a close friend" of Debtor, not as Debtor's spouse. [Dkt. No. 111, Ex. 2, para. 1].

occupancy of the premises. Debtor maintains that the judgment is not enforceable against her because she is not a named defendant in the state court action nor named in the judgment.[14] She also asserts she only occupied one room at the Linden Street Property and her share of the fair market value for use and occupancy could not, therefore, total $4,250 a month. Accordingly, she planned to object to Cox REIT's proof of claim.[15]

Debtor asserts that her monthly chapter 13 plan payments would aggregate $5,056 and her regular monthly mortgage payment are approximately $1,707.13. In support of her Motion to Convert, Debtor attaches a mortgage statement, dated August 18, 2023 ("August 2023 Mortgage Statement") and addressed to Nazir A. Choudhry, for the Express Drive North Property showing a total of $23,639.54 due.[16] [Dkt. No. 111, Ex. 1]. The August 2023 Mortgage Statement notes that loan is due for the August 1, 2022 payment and as of August 18, 2023, the loan has been delinquent for 382 days. *Id.* She also attaches an affidavit of contribution from Najabat attesting that he (i) is a close friend of the Debtor, (ii) owns real property known as 2143 East 22nd Street, Brooklyn, New York ("Brooklyn Property"), which

---

[14] As noted above, the Order of Ejectment is against not only the named defendants but also "John Doe" and "Jane Doe" and all other persons residing at or claiming any right or occupancy of the Linden Street Property. The Court takes judicial notice that Debtor resided at the Linden Street Property as of the petition date and she filed for bankruptcy under "Samra Ali aka John Doe aka Jane Doe aka Samra Bibi." This Court may take judicial notice of public filings, including a court's docket. *Teamsters Nat'l Freight Indus. Negotiating Comm. et al. v. Howard's Express, Inc. (In re Howard's Express, Inc.)*, 151 F. App'x 46, 48 (2d Cir. 2005); *see also Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) ("[C]ourts routinely take judicial notice of documents filed in other courts".).

[15] On October 9, 2023, Debtor filed an objection to Cox REIT's proof of claim. [Dkt. No. 113]. The objection was held in abeyance pending the outcome of the Debtor's Motion to Convert. After the Court denied the Motion to Convert, the Trustee filed an objection to Cox REIT's proof of claim on October 18, 2024. [Dkt. No. 142]. On November 14, 2024, the Trustee filed a motion to settle the claim objection. [Dkt. No. 145]. A hearing to consider the proposed settlement and the relief requested in the Trustee's motion was scheduled for December 12, 2024. No objection was filed to the Trustee's motion to settle the Cox REIT claim [Dkt. No. 149], and the Court entered an order on December 12, 2024 granting the Trustee's motion. [Dkt. No. 150].

[16] In pleadings filed on October 11, 2023 [Dkt. No. 115], the Trustee points out that Nazir Choudhry filed for chapter 13 relief *pro se* on September 11, 2023, Case No. 8-23-73335. Nazir listed the Express Drive North Property as his residence and Specialized Loan Servicing, the mortgagee, as the only creditor. The Court takes judicial notice that Najabat filed the bankruptcy petition for Nazir and Najabat provided his email address as the email contact for Nazir. On September 14, 2023, three days after filing for bankruptcy, Nazir filed a motion to voluntarily dismiss his chapter 13 case. An order was entered on October 13, 2023 dismissing Nazir's chapter 13 case.

is a 3-family property and generates $7,000 in rent on a monthly basis, and (iii) is committed to contributing "my rental income" of $7,000 per month towards the Debtor's chapter 13 plan. [Dkt. No. 111, Ex. 2]. As set forth below, and as established by the evidentiary record, none of these statements is accurate. First, he is not a "close friend" of Debtor, he is her husband. Second, he does not own the Brooklyn Property. Third, the claimed "rental income is not "his" income as he is not the owner of the Brooklyn Property.

The Trustee opposed the Motion to Convert asserting that (i) the sale of the Express Drive North Property would net sufficient funds to pay all allowed claims in full, including administrative expenses of the chapter 7 case, (ii) a public records search reveal that Najabat transferred his interest in the Brooklyn Property to Mahmood C. Hussain ("Mahmood") on October 31, 2005, (iii) absent third party contribution, Debtor lacks the financial resources to confirm a plan, and (iv) Debtor's conduct during the chapter 7 case is indicative of bad faith that would preclude her from being a chapter 13 debtor under *Marrama*. [Dkt. No. 117].

Debtor filed a reply to the Trustee's opposition. [Dkt. No. 119]. In her affidavit in reply, Debtor states that she now resides at the Express Drive North Property since she was evicted from the Linden Street Property. Additionally, attached as Exhibits A and B, respectively, to her reply affidavit is (i) an amended affidavit from Najabat and (ii) an affidavit from a family friend, Hayya Faisal Lodhi ("Hayya").[17] Najabat's amended affidavit of contribution states that his family owns the Brooklyn Property, and he is authorized to collect the rents from the Brooklyn Property and use these funds at his discretion. Attached to Najabat's amended affidavit is the affidavit of Nimra Faisal ("Nimra") stating (i) Najabat is authorized to manage the Brooklyn Property and collect the rent, enter into tenant leases, and commence eviction

---

[17] In her affidavit, Hayya states that she is a family member. As established by the evidentiary record, that statement is not accurate as Hayya is not a family member but rather a family friend.

proceedings as necessary, and (ii) after paying for any maintenance on the Brooklyn Property, Najabat is authorized to use the rental proceeds at his own discretion. The affidavit of contribution from Hayya states she is committed to contributing $3,000 per month to Debtor's chapter 13 plan.

The Court held a hearing on October 24, 2023 and scheduled an evidentiary hearing on the Motion to Convert. [Dkt. No. 122].

E.  Evidence Presented at the Hearing

At the evidentiary hearing, Peter Kamran, Esq. appeared on behalf of Debtor, Fred Kantrow, Esq. of The Kantrow Law Group, PLLC appeared on behalf of the Trustee, and the Trustee, Allan B. Mendelsohn, appeared. As noted above, only Najabat and Hayya testified at the evidentiary hearing.[18] The Motion to Convert is heavily dependent on the testimony elicited from Najabat and Hayya respecting their purported contributions to fund Debtor's chapter 13 plan. There is no dispute that absent the purported contributions, Debtor's plan fails as Debtor herself has insufficient income to fund a 100% plan. The Court listened carefully to the testimony and reviewed the exhibits in evidence. The testimony of Najabat and Hayya is summarized below.

Najabat testified at the evidentiary hearing that Debtor is his wife. Tr. 5:10. He married Debtor in 2019 or 2020. Tr. 23:12-17. Najabat further testified that he transferred his ownership of the Brooklyn Property to Mahmood Hussain, a construction contractor, on

---

[18] The Trustee's counsel issued a subpoena dated November 14, 2023 ("Subpoena") directing Debtor to appear and testify at the evidentiary hearing. [Dkt. No. 124]. On December 1, 2023, the Friday before the evidentiary hearing and more than two weeks after the Subpoena was issued, Trustee's counsel informed the Court that Debtor's counsel indicated for the very first time that Debtor would require an Urdu interpreter. The Trustee noted that Debtor proffered an affidavit in support of her Motion to Convert in English without an indication that it was translated from Urdu. While Debtor did not plan to testify, the Trustee noted that his ability to cross-examine the Debtor was an impossibility. [Dkt. No. 129]. Debtor's counsel filed a response asserting that Debtor's testimony was irrelevant as the issue to be decided at the evidentiary hearing is one of feasibility and whether the proposed contributors have sufficient resources of income to contribute the amounts needed for the Debtor's chapter 13 plan. [Dkt. No. 130].

October 31, 2005 to settle some debts. Ex. 6. On March 20, 2006, Najabat's relative, Samina Faisal, acquired title to the Brooklyn Property. Ex. 7. Samina Faisal passed away and her daughter, Nimra, controls the Brooklyn Property.[19]

Najabat himself filed for chapter 7 bankruptcy on July 19, 2018, listing the Brooklyn Property as his residence.[20] Tr. 24:3-9; Ex. 8. He lived in Brooklyn in 2018 because he had a business in New York City, and he was in a divorce proceeding. Tr. 24:8-11. Notwithstanding the transfer of the Brooklyn Property by deed in 2005, Najabat remained obligated on the mortgage on the Brooklyn Property. Tr. 18:17. However, Najabat admits that he doesn't make any mortgage payment and the last time he paid the mortgage was more than ten years ago. Tr. 18:20-23. Najabat claims he does not owe the mortgagee of the Brooklyn Property any money because he believes it's been written off due to his 2018 bankruptcy. Tr. 43:23-44:3. Najabat's Schedule D to his bankruptcy petition lists disputed judgment liens in favor of RBS Citizens Bank and PNC Bank N.A., each in the amount of $1,000,000 against the Brooklyn Property. The Brooklyn Property is currently in foreclosure proceedings. Tr. 19:2-3. When questioned about the status of the foreclosure proceedings, Najabat testified that (i) the bank is the owner of the property, Tr. 19:15-16; (ii) he is not the owner, and "[s]omeone else, they have to deal [with] the bank", Tr. 19:16-17, and (iii) Samina Faisal is the owner of the property, Tr. 19:18-21. *See also* Tr. 43:7-10.

Najabat's Schedule I to his 2018 bankruptcy petition stated that he was unemployed and received $324 in government assistance per month. Ex. 11. While he stated that he was paying rent when he lived at the Brooklyn Property, Najabat's Schedule J to his petition is

---

[19] Nimra is Hayya's sister. Hayya testified that the entire family owns the Brooklyn Property, but Nimra is the spokesperson who has the authority to represent all of the family and has decision-making authority. Tr. 56:20-22; 57:7-13.

[20] Bhatia & Associates PLLC was also Najabat's bankruptcy counsel. *See* Case No. 1-18-44150. Najabat obtained a discharge on December 18, 2018.

filled entirely with $0.00s and lists no expenses. Tr. 26:22-27:6; Ex. 11. Debtor's own amended Schedule I does not list Najabat as the recipient of any rental income. Tr. 17:15-18:4; Ex. 2. Najabat did not testify to having any current source of income other than the $7,000 of rent he collects from the Brooklyn Property.[21] The Court only has Najabat's testimony that he is authorized to collect the rent for the Brooklyn Property and that he has discretion to use such funds as he wishes.[22] On this point, Najabat's testimony was threadbare and unconvincing. No written agreement was produced, and as to any purported oral agreement he did not situate in time or place the alleged conversation in which the owner of the Brooklyn Property agreed to this consequential term concerning collection and use of the rental proceeds.

Najabat testified that most of the rent payments are in the form of cash. Tr. 29:11-22. While his TD Bank statements show cash deposits into his bank account each month, Najabat withdraws the cash and makes electronic transfers to pay his personal expenses, including his Capital One credit card bill. Tr. 34:22-36:7; Ex. 20. Najabat's ending bank balance for August 20, 2023 was $145.23. Tr. 37:23-25; Ex. 20. His ending bank balance for July 20, 2023 was $111.23. Tr. 37:10-11; Ex. 20. Even for the period ending May 20, 2023, where there were deposits totaling $7,373, the ending balance was just $1,589.07. Tr. 57:16-17; Ex. 20. That amount, like the ending balance for July and August 2023, falls far short of the funds needed by Najabat to meet his $7,000 per month contribution to Debtor's repayment plan. Najabat also testified that the Brooklyn Property needs a new roof. Tr. 37:14-15. When questioned what will happen to the needed repair to the Brooklyn Property during Debtor's repayment plan period if he must give Debtor $7,000 per month, Najabat stated he would just put off

---

[21] No explanation was offered by Najabat or Debtor as to how the collection of rental proceeds from the Brooklyn Property constitute income of Najabat.

[22] Nimra did not appear in Court to offer her testimony and the Trustee could not cross-examine Nimra as to the veracity and scope of the statements in her affidavit. Debtor did not seek to offer the affidavit in evidence. Had she done so, the Trustee undoubtedly would have lodged an objection to its admissibility.

replacing the roof until later. Tr. 37:16-20. The Court does not credit the testimony on this point, finding it to be unpersuasive and implausible.

As noted above, the affidavit of contribution from Hayya states she will contribute $3,000 per month to Debtor's chapter 13 plan. At the evidentiary hearing, Hayya testified that she takes home around $5,000 to $6,000 a month from Northwell, and she also has a per diem job. Tr. 60:22-23. Hayya did not, however, provide any evidentiary support for her per diem job claiming that she wasn't asked to provide it, Tr. 61:2, and testified that her per diem job isn't stable, Tr. 61:19-21. Hayya further testified that $6,000 to $7,000 can come from Northwell alone because she can pick up shifts. Tr. 61:2-4. However, she did not elaborate on or specify the availability of shifts at Northwell that would generate additional income to her.

Hayya also testified that the entire family owns the Brooklyn Property and Nimra has the authority to represent the family. Tr. 56:20-22. Hayya lives with Nimra but does not pay rent. Tr. 56:21-23. She contributes to the household expenses by paying for some items such as food and maintenance of her car. Tr. 58:1-4. Her car payment is $700 per month and car insurance is $200 per month. Tr. 58:5-8. She incurs credit card debt which she usually pays off in full. Tr. 58:11-15. She could not state her average credit card bill because it depends on what she spends that month – if she feels like she wants to take a trip somewhere, it'll be more and if she wanted just to get her nails done that month, it would be less. Tr. 58:17-20. Hayya testified that "if I'm helping someone, if I can't afford it, then I can't," yet she "will contribute on a monthly basis no matter what." Tr. 62:3-11. On this point, while it is generous of Hayya to contribute to Debtor's repayment plan, she has no contractual obligation to do so and there is nothing in the record evidencing that $3,000 per month will be available from Hayya over the life of Debtor's multi-year plan. Moreover, even if the record reflected that $3,000 per month will be available over the life of the plan, that amount alone is insufficient to fund the contemplated plan payments and remain current on the mortgage debt.

IV.    Discussion

A.  Section 706(a)

A chapter 7 debtor may convert her case to a chapter 13 case at any time so long as the case has not been previously converted from another chapter. 11 U.S.C. § 706(a). While "[a]ny waiver of the right to convert a case . . . is unenforceable", *id.*, a debtor's right to convert to a chapter 13 case is not "absolute." *Marrama*, 549 U.S. at 372. As noted above, section 706(d) provides that "[n]otwithstanding any other provision of this section, a case may not be converted to a case under another chapter of this title unless the debtor may be a debtor under such chapter." 11 U.S.C. § 706(d). Aside from requiring that the case has not been previously converted, § 706 conditions the right to convert on the debtor being eligible to be a debtor under the chapter to which the debtor seeks to convert. *Id.*; *see also Marrama*, 549 U.S. at 372 ("The words 'unless the debtor may be a debtor under such chapter' expressly conditioned [the debtor]'s right to convert on his ability to qualify as a 'debtor' under Chapter 13."). The eligibility requirement to be a chapter 13 debtor is twofold – one is statutory, and the other is based upon legal precedent.

i.    Statutory Requirement: Section 109(e)

To convert a case from chapter 7 to chapter 13, a debtor must first meet the statutory requirements of § 109(e), which provides, in relevant part, "[o]nly an individual with regular income … may be a debtor under chapter 13 of the [Bankruptcy Code]." 11 U.S.C. § 109(e). Section 101(30), in turn, defines "individual with regular income" to mean "individual whose income is sufficiently stable and regular to enable such individual to make payments under a plan under chapter 13 of this title . . . ." 11 U.S.C. § 101(30). The debtor has the burden of demonstrating the regularity and stability of income. *In re Negosh*, E.D. Bankr. Case No. 04-81073 (SB), 2007 WL 2445158, at *4 (E.D.N.Y. Aug. 22, 2007) (finding debtor failed to provide

evidence of regular income where debtor failed to indicate who the employer was and whether her monthly income would continue); *see also In re Antoine*, 208 B.R. 17, 19 (Bankr. E.D.N.Y. 1997)). "Thus, where a debtor fails to produce evidence of the existence of regular income, [the debtor] does not qualify for Chapter 13 relief under 11 U.S.C. § 109(e)." *In re Wilhelm*, 6 B.R. 905, 908 (Bankr. E.D.N.Y. 1980); *see also In re Sassower*, 76 B.R. 957, 961 (Bankr. S.D.N.Y. 1987).

"The debtor's income may originate from other individuals or relatives, but the sources should be examined to satisfy the standard of a sufficiently stable and regular income for those individuals." *In re Lynch*, No. 1-08-46308-dem, 2009 WL 1955748, at *3 (Bankr. E.D.N.Y. July 9, 2009). "[T]he payments need only be 'sufficiently stable and regular to enable such individual to make payments under a plan under chapter 13 of this title' and need not be adequate or sufficient to ensure full payment of a specific Chapter 13 Plan." *In re Santiago-Monteverde*, 512 B.R. 432, 443 (S.D.N.Y. 2014) (quoting 11 U.S.C. § 101(30)).

> Generally, gratuitous payments by family members and other third parties have not been held to constitute "sufficient stable and regular" income under the Bankruptcy Code. Courts have only accepted such contributions where the indicia of stability or regularity are present; for instance, where the contributor shares joint liability or common property interests with the debtor, has previously demonstrated willingness to assist the debtor, or possesses a substantial interest in the debtor's successful execution of the plan under consideration.

*Id*. at 442. Contributions of the non-filing spouse have been found to be sufficient where the spouse has significant earnings; the couple has a long history of mutual support and a stable marital relationship; and the non-filing spouse resides in, and is a co-obligor on the mortgage on, the marital residence, thus having an interest in making payments sufficient to cure the mortgage defaults and preclude foreclosure. *Antoine*, 208 B.R. at 20. *See also In re Campbell*, 38 B.R. 193, 196 (Bankr. E.D.N.Y. 1984) (finding the contributions of the debtor's sisters and

brother-in-law to be sufficient where the relatives are jointly liable with the debtor on the mortgage, possess an undivided property interest along with the debtor in the home, and demonstrate a willingness to assist by paying the debtor's attorney's fees).

ii.  Good Faith Requirement under *Marrama*

Even if a debtor satisfies the eligibility requirement of § 109(e), the record established in the chapter 7 case may cause the court to inquire as to whether a debtor engaged in bad faith conduct that would lead to dismissal or conversion of the chapter 13 case, such that the conversion to a chapter 13 would be futile. *Santiago-Monteverde*, 512 B.R. at 437 (noting that "if a debtor's Chapter 13 case would be subject to dismissal or conversion by the bankruptcy court pursuant to section 1307(c) of the Bankruptcy Code, then a debtor's right to convert may be forfeited.").

> In practical effect, a ruling that an individual's Chapter 13 case should be dismissed or converted to Chapter 7 because of prepetition bad-faith conduct, including fraudulent acts committed in an earlier Chapter 7 proceeding, is tantamount to a ruling that the individual does not qualify as a debtor under Chapter 13. That individual, in other words, is not a member of the class of "honest but unfortunate debtor[s]" that the bankruptcy laws were enacted to protect.

*Marrama*, 549 U.S. at 373-74 (quoting *Grogan v. Garner*, 498 U.S. 279, 287 (1991)). Although the Supreme Court did not set forth what constitutes "bad faith" sufficient to warrant denial of a conversion motion, it did indicate that such denial should be limited to "extraordinary cases" where the debtor's conduct is "atypical."  *Id.* at 375 n.11. "Discretion remains with the Court to judge the propriety of such a conversion." *In re Serravillo*, No. 802-88541-288, 2003 WL 24229765, at *1 (E.D.N.Y. Aug. 14, 2003). "[C]onversion is generally denied 'where the debtor acted in subjective bad faith and where conversion would be objectively futile.'" *Id.*, 2003 WL 24229765, at *2 (quoting *In re Porter*, 276 B.R. 32, 36 (Bankr. D. Mass. 2002)).

18

B. <u>Analysis</u>

Debtor proposes to pay all creditor claims, secured and unsecured, in full under a five-year chapter 13 plan. According to Debtor, this requires her to pay to the chapter 13 trustee approximately $5,056 per month, in addition to making post-petition mortgage payments of $1,707.13 per month. Those payments total $6,763.13 per month. It is undisputed that Debtor is unemployed and has no income to call her own, and thus falls short of meeting the eligibility requirement of "an individual with regular income" necessary to fund a chapter 13 plan. Without sufficient income of her own to fund a payment of $6,763.13 per month, the critical issue in this case is how will Debtor fund her substantial plan obligations. Addressing this critical issue, Debtor posits that the required funds will come entirely from the proposed contributions of Najabat, her non-debtor spouse, and Hayya, a family friend. The chapter 7 trustee takes a different view on the proposed contributions contending that the evidentiary record is barren as to the reliability of any such contributions.

The proposed contribution by Najabat of $7,000 per month, derived solely from the purported collection by him of $7,000 of rental proceeds from the Brooklyn Property which he does not own and admits is in foreclosure, is speculative at best. The testimonial and documentary evidence does not support the accuracy of his uncorroborated representation of fact that he is free to use all the monthly rental proceeds from a property in foreclosure as he sees fit after payment of maintenance expenses – expenses, such as roof repairs, that he claims he will defer so he can contribute to Debtor's plan for five years. Additionally, Debtor's amended Schedule I states that Najabat is unemployed and, as demonstrated below, Najabat's ending bank balances as reflected on his monthly bank statements fall far short of his purported monthly contribution to Debtor's plan.

Even assuming the existence of an oral agreement – incredulous as that may seem-between Najabat and the owner of the Brooklyn Property that he has the unfettered right to

keep the rental proceeds from the Brooklyn Property for his own use after payment of any property maintenance expenses for the month, the evidentiary record does not establish that Najabat consistently and regularly receives $7,000 in monthly rental proceeds. While the one-year leases indicate that there may be monthly rent proceeds aggregating approximately $7,000 a month, Exs. 17-19, Najabat's bank statements for the period September 20, 2022 through October 20, 2023 show deposits of $7,000 or more for only five months, to wit, (i) September 21, 2022 to October 20, 2022, (ii) October 21, 2022 to November 20, 2022, (iii) November 21, 2022 to December 2022, (iv) February 21, 2023 to March 20, 2023 and (v) April 21, 2023 to May 20, 2023. Ex. 20. Of note, review of the bank statements shows the rental receipts deposited into Najabat's bank account varies each month, again falling short of funds needed to meet his purported contribution commitment. *Id.* Relevant to this point is that Najabat's bank statements consistently show a monthly ending balance of less than $200.[23] Even in months where Najabat did have deposits exceeding $7,000, only the two months, i.e., September 2023 and May 2023, had ending balances that exceeded $1,000, again far short of the purported contribution commitment. *Id.* What is clear from the record is that the few hundred dollars remaining in Najabat's bank account at the end of each month is insufficient to support his purported contribution to Debtor's plan without consistently forgoing payment of his own personal expenses, including credit card obligations, as well as maintenance expenses for the Brooklyn Property. While Najabat asserts he could always obtain funds from his brothers to ostensibly make up any contribution shortfall, no evidence was proffered to support that conclusory statement.

---

[23] The only months where the ending balance exceeded $200 were the periods ending on: (i) Sept. 20, 2023, which had an ending balance of $1,102.23, (ii) May 20, 2023, which had an ending balance of $1,589.07, (iii) February 20, 2023, which had an ending balance of $266.37, (iv) January 20, 2023, which had an ending balance of $212.10, and (v) November 20, 2022, which had ending balance of $752.19. [Ex. 20].

Further, while Najabat testified that he uses the remainder of the rent receipts for his personal expenses, there is no evidence that those personal expenses included household expenses. Indeed, Debtor's amended Schedules I and J do not reflect any contribution by Najabat to the household income and expenses other than the $658 he allegedly receives in governmental assistance. [Dkt. No. 21]. Also, no evidence was proffered that Najabat is jointly liable with Debtor on any of her scheduled debts, such that he has a pecuniary interest in making sure the debts are paid in full under a repayment plan.

In the end, the Court does not find Najabat's testimony regarding his ability to contribute several thousands of dollars a month toward funding Debtor's chapter 13 plan to be credible or substantiated by any testimonial or documentary evidence. The Court finds Najabat's claimed contribution to be speculative given the uncertainty of sufficient available funds, along with no alternative funding mechanism should the rental income cease, and the lack of any legal obligation to cure the mortgage arrears on the Express Drive North Property. *Lync*h, 2009 WL 1955748, at *4. Accordingly, Debtor has failed to meet her burden of demonstrating that Najabat's access to rental receipts from the Brooklyn Property are sufficiently regular and stable to enable her to confirm a chapter 13 plan should the case be converted. Absent such $7,000 contribution, the plan fails as that leaves only Hayya's purported contribution of $3,000 which is short of the $6,763.13 Debtor claims is the monthly amount needed to satisfy creditor claims under her proposed repayment plan. Further, as noted above and as discussed below, the purported contribution from Hayya is far from certain.

Hayya testified that she is a close friend of Debtor, not a family member. Tr. 54:2-16. There is no evidence in the record that she lives at, or has an ownership interest in, the Express Drive North Property, and her pay statements for the period of August 2023 through November 4, 2023 list the Linden Street Property as her address. Ex. 21. There is no evidence

in the record that she is an obligor on the mortgage note or that she is a co-obligor on any of Debtor's debts and obligations. Further, no evidence was proffered to demonstrate that Hayya helped Debtor pay her attorney's fees in this case[24] or any of Debtor's personal expenses in the past. Thus, there is nothing in the record to show that Hayya had a prior willingness to assist Debtor, or that she has a substantial interest in Debtor's successful execution of a repayment plan under the factors set forth in *Santiago-Monteverde*. Accordingly, based on the record placed before the Court, Hayya's contribution, while noble, is not contractual and is unsupported by any legal obligation on her part to make a substantial monetary contribution to fund Debtor's proposed plan. As such it is "too tenuous to satisfy the element of stability." *In re Fischel*, 103 B.R. 44, 49 (Bankr. N.D.N.Y. 1989) (finding that contribution of a co-signer on a loan who also lived with the debtor to not be sufficient stable where the individuals were not related nor bound by marriage and the record is silent on the prepetition duration of their shared living arrangement).

Because Debtor has failed to meet her burden of establishing, by a preponderance of the credible evidence, that the purported third-party contributions are sufficiently stable and regular to enable her to fund the proposed 100% repayment plan, the Court finds that Debtor is not "an individual with regular income" and is thus ineligible to be a debtor in chapter 13. Having reached that conclusion, the Court need not, and does not, address the Trustee's alternative argument that conversion of this chapter 7 case to a case under chapter 13 is not permitted under the rationale of *Marrama*.

---

[24] The Disclosure of Compensation of Attorney for Debtor indicates that the source of compensation for filing the bankruptcy petition was from Debtor. [Dkt. No. 11].

V.    <u>Conclusion</u>

For the foregoing reasons, Debtor's Motion to Convert this chapter 7 case to a case under chapter 13 of the Bankruptcy Code is denied.



Dated: December 26, 2024
      Central Islip, New York

**Louis A. Scarcella**
**United States Bankruptcy Judge**